## RED CAB CO. v. ST. PAUL MERCURY INDEMNITY CO. *

No. 6033.

Circuit Court of Appeals, Seventh Circuit.

June 17, 1938.

Rehearing Denied July 13, 1938.

*Writ of certiorari denied, 59 S.Ct. 148, 83 L.Ed. —.

190

See, also, 90 F.2d 229; 58 S.Ct. 586, 82 L.Ed. 845.

Burke G. Slaymaker, of Indianapolis, Ind., for appellant St. Paul Mercury Indemnity Co.

John K. Ruckelshaus, of Indianapolis, Ind., for appellee Red Cab Co.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

EVANS, Circuit Judge.

The opinion of this court in this case (7 Cir., 90 F.2d 229) and the opinion of the Supreme Court (St. Paul Mercury Ind. Co. v. Red Cab Co., 58 S.Ct. 586, 82 L.Ed. —, decided February 28, 1938) are referred to for elaboration of the following statement of facts.

The plaintiff instituted this action to recover upon a contract of workmen's compensation insurance evidenced by a binder effective for thirty days, executed December 30, 1933.

A trial by jury was waived and the court made special findings of fact and conclusions of law. Judgment was entered for the plaintiff for the amount of the damages sustained while the insurance was allegedly in force. Defendant does not object to the special findings, but excepts to the conclusions of law which the court made and to the court's failure to adopt certain conclusions submitted by it. The gist of its contention is that the policy of insurance was cancelled immediately upon defendant's discovery that the insurance had been written.

The binder was signed by the defendant's agent and read as follows:

"December 30th, 1933.

"St. Paul Mercury Indemnity Co.— Insurance Company of St. Paul, Minn., at its Indpls, Ind. Agency agrees to bind for a period of 30 days from 12 o'clock noon of said date, insurance as follows:
Assured—Red Cab Company—
Property to be covered—Workmen's Compensation—
Location of property—739 East Market St., Indianapolis Ind.
Amount $ Open—Rate tariff—Map Sheet —Block—

"This binder to continue in force until replaced by regular policy (but in no event for a longer period than —— days), and shall be subject to all the terms and conditions of the regular policy of said company, but it may be cancelled by notice to the assured or his agent placing the insurance; the termination of the liability hereunder to be effective from 12 o'clock noon standard time, next subsequent to such notice.

"Myron S. Harlan,
"Agent."

On January 3, defendant's agent sent the following letter to plaintiff's agent, Wagoner:

"January 3rd, 1934.
"Mr. C. E. Wagoner,
"c/o Aetna Casualty Company,
"Illinois Building,
"Indianapolis, Indiana.
"Dear Sir:
"Re: Red Cab Company.

"We regret to be compelled to advise that as per understanding we submitted this risk to the St. Paul Mercury Indemnity Company and also the National Casualty Company, both of whom we represent, and have a declination from each of the institutions.

"Unfortunately, we do not have any other facilities for handling this class of business.

"We are returning herewith the payroll report statement which you left as a guide for submission.

"Regretting our inability to serve you, however, thanking you for the opportunity, we beg to remain,
"Yours very truly,
"Myron S. Harlan."

No controversy as to the amount of recovery exists.

The court found that Wagoner was authorized by the plaintiff to procure, receive

and accept from the defendant a binder contract of insurance, and also that Harlan was the licensed agent of the defendant at Indianapolis and, as such, authorized to effect contracts of workmen's compensation insurance and to give notice of, and effect cancelation of the same for the defendant.

A second letter bearing date of January 4th was written by Harlan to Wagoner which asked for the return of the binder, but it must be ignored as the evidence showed it was not received by Wagoner.

Plaintiff mailed defendant a check for the premium ($215.61) which was returned February 16, 1934, after the losses due to accidents occurred, and after the insurance covered by the thirty-day binder had expired.

The court also made the following finding which we will refer to as finding No. 16:

"That Clifford E. Wagoner, after receipt of the letter dated January 3, 1934, from Myron S. Harlan * * * communicated by letter with Myron S. Harlan, which letter notified said Myron S. Harlan that Clifford E. Wagoner had interpreted Harlan's letter of January 3, 1934 as a refusal to issue a regular policy of insurance by the defendant and not as a cancelation of the binder contract of insurance; that neither the plaintiff nor Clifford E. Wagoner received from Myron S. Harlan or the defendant during the 30 day period from December 30, 1933, any correspondence other than Harlan's letter of January 3, 1934 * * *."

As a conclusion of law the court held that defendant's letter dated January 3, 1934, and received by Wagoner on January 4, did not constitute a cancelation of the binder contract of insurance. It further found that the plaintiff was entitled to judgment for losses sustained during the thirty days covered by the binder.

The question is a narrow one. Did defendant cancel the binder contract of insurance? Determination of this question turns largely upon the effect of the letter of January 3.

It is defendant's contention that said letter cancelled the contract. Plaintiff contends that it did not cancel the binder contract but did inform plaintiff of defendant's refusal to carry the permanent insurance risk.

We are inclined to accept the plaintiff's view which was the view adopted by Judge Baltzell.

It might well be that an agent authorized to write insurance and who issued a thirty-day binder would be notified not to write the insurance for a longer period although carrying out the terms of the binder contract for a short period.

If defendant wished to or intended to cancel its binder as well as to refuse to issue a longer insurance contract it chose unfortunate language.

The issuance of a binder is a well recognized, and an essential part of the business of writing insurance.[1] It is, so to speak, an interim insurance contract. It covers a short period,—between the date of application for insurance and the date when the policy is finally executed and delivered. Defendant's agent evidently felt free to issue a binder but before delivering the permanent insurance contract he deemed it advisable to consult the managerial officers of the defendant. He could have issued the policy and it would have been binding. That is to say, he was a duly authorized, licensed agent of defendant, and as such, was authorized to write insurance in Indianapolis and to validly execute and deliver contracts for defendant. His action in issuing the binder was therefore binding on the defendant. He, however, refused to issue the longer term policy, but submitted the application to defendant who rejected the risk. Did it also cancel the binder? That is the question. In its letter of January 3rd defendant did not use the word "binder." Nor did it mention cancelation.

Finding 16 covers facts which confirm our conclusion. Immediately upon plaintiff's receipt of the January 3rd letter it wrote to inquire if defendant intended by such letter to cancel the binder as well as to not issue the permanent policy. No answer was received.

While the foregoing conclusion seems to be unavoidable, it is necessary that we consult the Indiana Statutes and decisions more particularly to ascertain whether the law of that State requires a different con-

[1] See notes in 81 A.L.R. 332, 107 A.L.R. 194; Couch, Cyclopedia of Insurance Law, Sec. 91; Cooley's Briefs on Insurance, Vol. 1, pages 809 et seq.

192

-clusion. New York Life Ins. Co. v. Jackson, 58 S.Ct. 871, 82 L.Ed. —, decided May 16, 1938; Erie R. Co. v. Tompkins, 58 S. Ct. 817, 82 L.Ed. —, 114 A.L.R. 1487, decided April 25, 1938. Such an examination, however, leaves us even more convinced of the correctness of this conclusion.

■ The Indiana Legislature has enacted considerable legislation on the subject of workmen's compensation insurance. (Burns' Indiana Statutes, Annotated, 1933, Volume 8, Chapter 16, 40-1601 et seq.) Because of the public interest in the subject-matter, the legislature has acted and its legislation dealing with the terms of the contract of insurance becomes a part of every insurance policy issued in said state. Hack v. American Surety Co., 7 Cir., 96 F.2d 939, decided by this court April 26, 1938; United States F. & G. Co. v. Poetker, 180 Ind. 255, 102 N.E. 372, L.R.A.1917B, 984.

In subdivision (e) of Sec. 40-1605, Burns' Indiana Statutes, Ann., 1933, the cancelation of an insurance policy covering workmen's compensation is covered:

"Any termination of this policy either by cancelation or expiration shall not be effective as to employees of the insured covered hereby until ten days after written notice of such termination has been received by the industrial board of Indiana at its office in Indianapolis, Indiana."

■ If we assume that a binder is a "policy" then the record before us fails to show any valid cancelation of the contract. In the absence of an Indiana decision to the contrary we see no reason for excluding a binder from the term "policy" as that word is used in said sub-paragraph (e) of the statute.

Whatever may be the limitations of the term "policy" as here used, it is clear that there was present a legislative intent to protect beneficiaries under a workmen's insurance policy. The insured by this legislation was to be given a short period of time within which to effect other insurance.

Our conclusion is that the District Court properly held that the letter of January 3 was not a cancelation of the insurance represented by the binder.

■ The contention is also made by the defendant that the pleadings did not set forth the insurance contract but merely copied the binder which in turn referred to the insurance policy. This was all that was necessary in view of the Indiana workmen's compensation insurance act which defined the terms of such insurance contracts.

The judgment is

Affirmed.