736

**TOOMEY et al. v. TOOMEY.**
No. 6466.

Circuit Court of Appeals, Seventh Circuit.
July 28, 1938.

Ira J. Covey, of Peoria, Ill., and Walter C. Overbeck, of Henry, Ill., for appellants.

George A. Brautigam, of Chicago, Ill., for appellee.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This is an appeal from a decree entered in an interpleader suit filed by the New York Life Insurance Company to determine who was entitled to the proceeds of a certain insurance policy on the life of one Floyd W. Toomey, deceased. The claimants were the brother and sister of the decedent, appellants in this proceeding, who alleged that they were assignees of the policy, and his widow, appellee, who was the named beneficiary.

The following facts are set forth in the court's findings: The insurer executed and delivered to decedent the policy now in question on February 27, 1929, insuring his life for $5,000, payable upon his death to Mary Toomey, his wife. The policy contained the provisions that any assignment must be made in duplicate, and one copy filed with the insurer, and that the insured might change his beneficiary upon written notice to the insurer, accompanied by the policy to enable the insurer to endorse the change thereon, and unless so endorsed the change should not take effect. Upon delivery of the policy to the insured, he gave it to his wife who misplaced it some time prior to March 1932, when the insured applied for and received a lost policy certificate. This was also delivered to appellee who paid practically all the premiums on it from her own personal funds from 1932 until the death of decedent on May 7, 1935. The interpleader admitted liability on the policy in the amount of $5,023 which was deposited with the court.

Decedent and appellants were the only heirs at law of their mother, Minnie E. Toomey, who died intestate, whereupon decedent was appointed administrator of her estate which consisted of one parcel of real estate and certain personal property including the following notes:

$8,355.14, signed by F. W. Toomey (decedent)
960.00, " " C. W. Toomey
100.00, " " Mattie E. Johnson

On September 27, 1933, decedent executed a judgment note, payable one year after date, in favor of his sister, Mrs. Johnson, for $2,795, and at the same time both of them signed the following instrument:

"I, Mattie E. Johnson, do hereby relieve F. W. Toomey, Admr. of Minnie E. Toomey Estate of Further financial responsibility on delivery of note for $2,975.16 and New York Life Insurance policy for the sum of $5,000.00 to be held by C. H. Toomey. Beneficiaries to be C. H. Toomey, Mattie E. Johnson until notes held by them are paid, the balance going to Mary P. Toomey wife of F. W. Toomey. * * *"

On the same date, decedent signed a judgment note for $2,000 payable one year after date, in favor of his brother, and contemporaneously therewith, the two of them signed the following instrument:

"I, C. H. Toomey do hereby agree to relieve F. W. Toomey, Admr. of Minnie E. Toomey Estate of further financial responsibility on delivery of the following Quit Claim Deed to his equetty (sic) in house on N. Peoria St., Bradford, Ill.

"Note for Two Thousand Dollars ($2,000.00) bearing interest 6%.

"Insurance Policy in New York Life for the sum of $5000.00 to be made payable to the following beneficiaries, C. H. Toomey, and Mattie E. Johnson until notes held by them are paid, the balance to go to Mary P. Toomey, wife of said F. W. Toomey."

Decedent had only the one policy in the New York Life Company when these instruments were executed, and did not take out another one later. The real estate, quit claim deed to which he agreed to give appellant, is the house formerly owned by his mother, and a part of her estate which he was administering. The deed was never executed, and neither note was ever paid, although about $285 was paid to Mrs. Johnson on account of interest on the note. The policy was not assigned, and there was no evidence that either appellant ever took any steps during the year and a half between the execution of the above instruments and decedent's death to cause decedent to deliver the policy or change the beneficiary. Mrs. Johnson was appointed administratrix of her mother's estate after decedent's death on petition filed by her and C. H. Toomey.

The court further found that the facts in evidence did not establish an agreement to assign, or to change the beneficiary named in the policy, and that there was no consideration shown by the evidence for the two notes; that decedent had never been released from his obligation to make an accounting as administrator of his

mother's estate and was not entitled to such release until he delivered the quit claim deed and the policy, and that in addition to the notes above set out, the delivery of these instruments was optional with decedent, he nowhere agreeing to execute the deed or change the beneficiary of the policy. These findings, included among the findings of fact, but most of which are conclusions of law, are all assigned as error by appellants. They also assign the failure of the court to find (1) that the assignment or agreement to change the beneficiary acted as a revocation of the designation of appellee as beneficiary to the extent of the debts owed by decedent to appellants; (2) that the assignment of September 27, 1933, having been delivered to them on that date constituted in law a symbolical delivery of the policy to them as of that date; (3) that the contract of September 27, 1933, was fully performed by appellants; and (4) that the decedent was bound to deliver the policy within a reasonable time to appellants and to execute a deed'for his interest in the real estate, and that upon his failure to carry out such agreement the court should decree the specific performance thereof.

■ Appellants contend that the agreements of September 27, 1933, constituted contracts for a· full consideration which obligated decedent to change his beneficiary so as to pay the notes to appellants, or that these agreements constituted equitable assignments of the policy to the extent of the amounts due on the notes. We cannot agree with either contention. Instead, we agree with the conclusion of· the District Court that there is no language in the instruments by which decedent obligated himself or promised to do anything. We think the instruments are simply to be construed as releases on the part of appellants, conditioned upon the doing of certain acts by decedent. The fact that he appended his signature to them does not operate to create a promise on his part to do those acts. It is clear, and it must have been clear to appellants, that the instruments contemplated further action by decedent. The notes were to be executed and delivered; the beneficiaries of the policy were to be changed; the policy was to be delivered; the quit claim deed was to be executed and delivered. An instrument cannot be construed to accomplish an effect in and of itself when by its own terms it contemplates the doing of further acts to accomplish that

effect. Appellants' entire argument assumes that the instruments created a valid assignment. It disregards the complete absence of language to accomplish that purpose. We cannot construe " * * * on delivery of policy * * *. Beneficiaries to be C. H. Toomey, Mattie E. Johnson until notes held by them are paid * * *" to constitute a delivery of the policy and a designation of beneficiaries. Nor can· we even construe it as a promise to deliver and to designate. The District Court stated that it was a matter of speculation whether decedent himself ever intended to deliver the policy. Certainly there was no evidence introduced to indicate that he made any attempt to obtain the policy from his wife, and none to indicate that he made any attempt to execute a valid assignment or change of beneficiary in accordance with the provisions of the policy for those purposes.

■ While it is true that no particular form of words is necessary to constitute an equitable assignment (Savage v. Gregg, 150 Ill. 161, 37 N.E. 312), there must be a clear manifestation of intent to assign, and such manifestation of intent is wholly lacking here.

■ Appellants' sought to introduce evidence which they claim supplies the proof of decedent's indebtedness and his intent to secure the debt by assignment of the policy. This evidence was in the form of three letters written by him in 1932, and a· conversation later. In each letter there ·was a statement, in one form or another, that he was getting the· papers pertaining to the policy made out and would forward them. Certainly they add nothing to the instruments signed over a year later, when apparently he was still talking about doing something he may or may not ever have intended to do. The conversation, testimony as to which was excluded, took place between Mrs. Johnson and decedent the day after the execution of the instruments when he stated that he would have the policy in a week or so and would send it to C. H. Toomey, and.that he would have the duplicate policy made, with the agreement or assignment on it, and send it to Toomey. If competent, we would interpret this as further evidence that the parties knew that the instruments could not be self-operating, but that further action was required and contemplated, and in the absence of that further action, the instruments never became operative. Moreover, when death

**739**

sealed the mouth of decedent, it also sealed the mouth of claimant, Mrs. Johnson. Admission of the evidence was rightfully refused.

In support of their plea for specific performance of the alleged contract to assign the policy, appellants rely on Lovinger v. Garvan, D.C., 270 F. 298. There the District Court for the Southern District of New York, by Mr. Justice Learned Hand, held that a party who had rendered services to a decedent in reliance upon her promise to make her the beneficiary of a life insurance policy was entitled to the proceeds of the policy as against the Alien Property Custodian who claimed it as successor to decedent's brother, the beneficiary named in the policy. The court found that although the policy had not in fact been assigned, nor the beneficiary changed, there had been a promise to do so, and the services had been rendered following the promise, and the parties mutually understood that the promise was made as a consideration for the performance. The policy in that case had been delivered to the promisee, and the decedent had requested the agent of the insurer to make the change, but the latter had suggested that she wait until she recovered from an operation to have the change made. Judge Hand held that the promisee was entitled to specific performance of the contract, and her right to it was not barred by the death of the promisor, since there had been an enforceable contract. He therefore ruled that the court could "disregard the formal steps, and treat the promisee as an already substituted beneficiary." The facts presented by the case at bar are not analogous, hence the Lovinger Case furnishes no authority for the rendering of similar relief here. "If a contract is freely and voluntarily executed, and its terms are clear and specific, and it is free from objection, specific performance will be decreed as a matter of right and not as a matter of favor. [Citing Illinois cases.] The terms must, however, be clear, certain, and free from ambiguity and doubt. * * * A court is without authority to compel a party to do something he did not contract to do." Schmidt v. Barr, 333 Ill. 494, 165 N.E. 131, 135, 65 A.L.R. 1. See also Threlkeld v. Inglett, 289 Ill. 90, 124 N.E. 368.

This case was briefed by counsel prior to the decisions of the Supreme Court

in Erie v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. ——, 114 A.L.R. 1487, Ruhlin v. N. Y. Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. ——, Rosenthal v. New York Life Ins. Co., 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. ——, and N. Y. Life Ins. Co. v. Jackson, 304 U.S. 261, 58 S.Ct. 871, 82 L.Ed. ——. The case was presented by the parties as one of general law. Under the rulings in those cases, however, it became our duty to study the questions presented in accordance with the law of Illinois where the case arose, rather than in accordance with the general law. We have done so, but we find no cases precisely in point. Certainly, we find no Illinois decisions which would sustain a decision in favor of appellants. The decree is, therefore, affirmed.